UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-14355-Civ-Martinez/Maynard

STEPHEN LYNCH MURRAY,

      Plaintiff,

v.

PHIL ARCHER, *et al.*,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before me upon *pro se* Plaintiff Stephen Lynch Murray's complaint alleging violation of his rights in retaliation for his exercise of free speech under the First Amendment. According to his complaint, Plaintiff is the owner of several websites used to post observations and grievances about various government, law enforcement, and political entities. On these websites, Plaintiff describes what he believes is lying, evidence tampering, and jury tampering by police and prosecutors involved in the investigation and subsequent prosecution of Plaintiff's acquaintance for murder. DE 1 at ¶¶ 11-41. Plaintiff claims that as a result of his posts and in order to deprive him of his First Amendment rights, the governor, a state congressman, a state attorney, and police took actions to unlawfully track, search, and arrest Plaintiff without probable cause. DE 1 at 1; *see also* DE 1 at 3, ¶8 (alleging that Defendant violated Plaintiff's civil and constitutional rights with false arrest, detention, and an illegal search for the purpose of depriving Plaintiff of his first Amendment rights).

Plaintiff names five Defendants in this lawsuit. He sues three individuals: State Attorney for the 18th Judicial Circuit Phil Archer ("State Attorney Archer"); Speaker of the Florida House of Representatives Chris Sprowls ("Speaker Sprowls"); and Florida Governor Ron DeSantis

("Governor DeSantis").   *Id*. at ¶¶ 2, 3, 6.   He sues two sheriff's offices: Okeechobee County

Sheriff's Office ("OCSO") and Pinellas County Sheriff's Office ("PCSO").   *Id*. at ¶¶ 4-5.   All five

Defendants have filed motions to dismiss which are now pending.   DE 9, 13, 20, 26, and 40.   The

Honorable Jose E. Martinez referred all pending motions to me for appropriate disposition.   DE

56.   I have reviewed the motions to dismiss, Plaintiff's responses thereto (DE 11; DE 22; DE 23;

DE 28; DE 40), and Defendants' replies (DE 36; DE 37; DE 39).   Being otherwise duly advised, I

respectfully **RECOMMEND** that the motions to dismiss be **GRANTED**.

## STANDARD OF REVIEW

To state a claim for relief, a pleading must contain "(1) a short and plain statement of the

grounds for the court's jurisdiction; (2) a short and plain statement of the claim showing that the

pleader is entitled to relief; and (3) a demand for the relief sought."   Fed. R. Civ. P. 8.   Federal

Rule of Civil Procedure 10 requires a complaint to "state its claims … in numbered paragraphs,

each limited as far as practicable to a single set of circumstances," and that "each claim founded

on a separate transaction or occurrence … be stated in a separate count."   Fed. R. Civ. P.

10(b).   Rules 8 and 10 "work together to require the pleader to present his claims discretely and

succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading,

[and] the court can determine which facts support which claims and whether the plaintiff has stated

any claims upon which relief can be granted …."   *Fikes v. City of Daphne*, 79 F.3d 1079, 1082

(11th Cir. 1996) (internal quotation marks and citation omitted).

To survive a motion to dismiss under Rule 12(b)(6), a claim "must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).   "[T]he pleadings are construed broadly," *Levine v. World Fin. Network*

*Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the complaint's allegations are viewed in

the light most favorable to the plaintiff, *Hawthorne v. MacAdjustment, Inc.*, 140 F.3d 1367, 1370

(11th Cir. 1998).  A claim is subject to dismissal if the plaintiff can prove no set of facts to support

the claim.  *Ventrassist Pty Ltd. v. Heartware, Inc.*, 377 F. Supp. 2d 1278, 1285 (S.D. Fla. 2005).

Alternatively, dismissal is warranted when the allegations on their face show that an affirmative

defense or other legal bar precludes recovery on the claim.  *See Powell v. Barrett*, 496 F.3d 1288,

1304 (11th Cir. 2007); *Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir. 2003).

For purposes of the Rule 12(b)(6) analysis, a court assumes as true all of Plaintiff's well-

pleaded facts and construes all inferences reasonably drawn therefrom in his favor.  If the

allegations in the complaint are more conclusory than factual, however, a court is not required to

assume their truth.  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). A

complaint can only survive Rule 12(b)(6) dismissal if it contains factual allegations that are

"enough to raise a right to relief above the speculative level, on the assumption that all the [factual]

allegations in the complaint are true."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Federal Rules demand "more than an unadorned, the-defendant-unlawfully-harmed-me-

accusation."  *Iqbal*, 556 U.S. at 662.  "Mere 'labels and conclusions … will not do,' and a plaintiff

cannot rely on 'naked assertions devoid of further factual enhancement.'"  *Franklin v. Curry*, 738

F.3d 1246, 1251 (11th Cir. 2013) (citation omitted).

If a complaint is filed with exhibits, a court must also consider the facts derived from the

exhibits.  Exhibits attached to the complaint are treated as part of the complaint for Rule 12(b)(6)

purposes.  *Crowder v. Delta Air Lines, Inc.*, 963 F.3d 1197, 1202 (11th Cir. 2020); *see also Gill*

*ex rel. K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019); *Thaeter v. Palm Beach Cty. Sheriff's*

*Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).  Where the facts in the exhibits contradict the

allegations in the complaint, the exhibits control.  *F.T.C. v. AbbVie Prods. LLC*, 713 F.3d 54, 63

(11th Cir. 2013); *see also Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007); Fed.

R. Civ. P. 10(c) (providing that a written instrument that is an exhibit to a pleading is part of the pleading for all purposes); *see also Jordan v. Miami-Dade Cty.*, 439 F. Supp. 2d 1237, 1240 (S.D. Fla. 2006) ("Exhibits attached to a Complaint are properly considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion."). A plaintiff should not be allowed, however, to pick and choose which parts of a single document he wants a court to consider. A court may consider "the full text of documents that are quoted in or attached to the complaint," and a litigant's "failure to include matters … that they apparently most wanted to avoid – may not serve as means of forestalling the district court's decision on the motion." *Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992).

Although a court ordinarily may not look beyond a plaintiff's complaint and its exhibits in determining a motion to dismiss, it may consider extrinsic documents attached to a motion to dismiss without converting the motion into one for summary judgment if the documents are central to the plaintiff's claim and their authenticity is not challenged. *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015); *see also Crowder*, 963 F.3d at 1202 (*citing Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018) ("Under the doctrine of incorporation by reference, [courts] may also consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity."); *Hi-Tech Pharms., Inc.*, 910 F.3d at 1189.

In reviewing a complaint filed by a *pro se* litigant, a court must apply the "liberal construction to which *pro se* pleadings are entitled." *Holsomback v. White*, 133 F.3d 1382, 1386 (11th Cir. 1998); *see also Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008) (noting that *pro se* pleadings are held to a less strict standard than pleadings from counseled parties and are liberally

construed).  However, "[t]he pauper's affidavit should not be a broad highway into the federal courts."  *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984).  Liberally construing a *pro se* pleading does not give "a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action."  *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quotation omitted).  At bottom, the question is not whether the claimant "will ultimately prevail … but whether his complaint [is] sufficient to cross the federal court's threshold."  *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

## **BACKGROUND**

The background facts are drawn from Plaintiff's complaint and exhibits attached thereto. I assume these facts as true and draw all reasonable inferences in Plaintiff's favor as I must on a motion to dismiss.  I do not, however, assume the truth of any allegations that are conclusory, unsupported, speculative, or draw legal conclusions.

I also consider facts drawn from the criminal complaint and arrest warrant filed against Plaintiff in Pinellas County, Florida on January 25, 2021.  The criminal complaint and arrest warrant are attached to Defendant Archer's motion to dismiss at DE 20-1.  As set forth in the Standard of Review section, I may consider these documents without converting Defendants' motions into summary judgment motions because Plaintiff attached portions of these documents to his civil complaint as Exhibits E and F (DE 1 at 57-58), Plaintiff does not dispute the authenticity of the complete version attached to Defendant Archer's motion at DE 20-1, and these documents are central to Plaintiff's claims of illegal arrest, search, and seizure.

The relevant allegations may be summarized as follows.  Plaintiff's acquaintance, Mandi May Jackson ("Jackson"),[1] was convicted of the December 2016 murder of strip club manager, James Mulrenin in Seminole County, Florida.  DE 1 at 5-10.  Plaintiff alleges that Jackson's conviction was unlawful because State Attorney Archer and his employees committed perjury and tampered with evidence in the case.  *Id.*  Plaintiff complained to State Attorney Archer and many others about what he believes are crimes committed in Jackson's case.  Plaintiff also sent "grievance emails" to State Attorney Archer at the email address philarcher@sa18.org which Plaintiff found listed on a website.  *Id.* at ¶42.  Plaintiff also shared what he views as documentation of these crimes on various social media venues, including his websites.  *Id.* at ¶¶40,133.

In the spring and summer of 2020, Plaintiff emailed complaints about Jackson's case and the Florida justice system generally to every Republican candidate for public office listed on the Florida Department of State website, as well as to some Republican and Democrat congressmen in Washington D.C.  DE 1 at ¶¶ 42-45.[2]  Plaintiff admits sending over a thousand emails to elected and government officials.  *Id.* at ¶105. Plaintiff also "spent a lot of time driving traffic in Republican chatrooms, and in comment sections on news and betting sites, and on sites like Breitbart.com, City-Journal.org, and Hoover.org."  *Id.* at ¶49.  "To make a permanent home for all these policy observations and arguments," Plaintiff created a new website called cops2prison.org. *Id.* at ¶51.  Plaintiff also runs a YouTube channel.  *Id.* at ¶62.  Plaintiff posted his views on cops2prison.org, his YouTube channel and other websites and social media platforms.  *Id.* at ¶¶48-55.  In late January 2021, Plaintiff visited Stetson University College of Law in Tampa, Florida and posted flyers "to educate law students" about his views and "drive traffic to his website."  *Id.*

---

[1] Plaintiff was acquainted with Jackson and avers that, in October 2015, he anonymously reported Jackson's pimp to the Florida Department of Children and Families.  DE 1 at ¶13.

[2] Plaintiff also sent grievances to Republican and Democrat congressmen in Washington DC.  *Id.* at ¶¶44-45.

at ¶¶80-89.  In addition to issues with policing practices and the justice system generally, one of Plaintiff's main grievances is his perception of the mishandling of the 2020 Presidential election by the Republican party, of which he is a member.  *Id*. at ¶45.

Plaintiff also viewed the Twitter account of Speaker Sprowls and posted links on Speaker Sprowls' Twitter feed "documenting prosecutorial misconduct in Florida."  *Id*. at ¶54.  While on Speaker Sprowls' Twitter feed, Plaintiff saw a photograph of Speaker Sprowls' wife on Airforce One with former President Donald Trump.  *Id.* at ¶55.  On January 6, 2021, Plaintiff posted messages on Twitter "tagging" Speaker Sprowls and his wife so that his messages would show on their Twitter accounts.  DE 1 at ¶¶55-61; DE 20-1 at 6-7.  Plaintiff's posts included the photograph of Speaker Sprowls' wife with President Trump and included several concerning texts.[3]  DE 20-1 at 7.

On January 6, 2021, Plaintiff emailed the picture of Speaker Sprowls' wife to State Attorney Archer.  Plaintiff admits he emailed the photograph with the message: "omg, is pimping legal in Florida? Because I am going to make this bitch my whore." DE 1 at ¶¶55-61.  According to the criminal complaint, Plaintiff's email said: "Hey Phil, look at the attached photo.  Is pimping legal in Florida?  Because I am going to make the bitch in the attached photo my whore.  You

---

[3] The texts included the following, among others:

> Whoever slanders his neighbor secretly I will destroy.  Whoever has a haughty look and an arrogant heart I will not endure.
> …
>
> The pride of your heart has deceived you, you who live in the clefts of the rock, in your lofty dwelling, who say in your heart "Who will bring me down to the ground?"
> …
>
> There are things that the Lord hates, seven that are an abomination to him, haughty eyes, a lying tongue, and hands that shed innocent blood.

DE 20-1 at 7.

understand me?"  DE 20-1 at 8.  The email also included a forward of an earlier email sent from the same account stating: "Dear Phil, LOL, I was trying to remember the name of your local state rep Tyler something. … But anyway please pass a message along to him from the white voter to Republicans 'Look at me. I did this to you.'"  The email attached the same photograph of Speaker Sprowls' wife and contained a link to a YouTube video showing a clip from the movie "A Bronx Tale."  *Id.* at 8-9.  In the video, a group of individuals attacks another group of people with fists and weapons, and the leader of the group doing the attacking leans down to a person injured on the ground and states "I did this to you."  *Id.* at 9.

Plaintiff alleges that after he sent the email about Speaker Sprowls' wife to State Attorney Archer, the Defendants retaliated against him by having him wrongfully arrested in January 2021. DE 1 at 20-37.  He also complains that law enforcement seized and searched his cellphones and laptop as part of the arrest and did not return the items to Plaintiff for six months.  *Id.* at ¶170. According to Plaintiff, law enforcement kept him "out on bond for five months without ever charging [him] with a crime."  *Id.* at ¶132.

About seven months later, on August 15, 2021, Plaintiff submitted a complaint on the Florida Inspector General's website stating that State Attorney Phil Archer and Speaker Chris Sprowls had been sending sheriffs to harass Plaintiff without probable cause.  DE 1 at ¶132. Plaintiff says the next day, deputy sheriffs from OCSO confronted Plaintiff at a 7-11 gas station. The officers stated that they were conducting a welfare check on Plaintiff based on orders from the Governor.  They also said Plaintiff should stop doing whatever he was doing that caused the Governor to send them.  *Id.* at ¶¶134-136.  One officer said they were talking to Plaintiff because of the complaint that he sent to the Florida Inspector General.  *Id.* at 62-67.  That officer "hinted it would be bad news" if Plaintiff did not stop whatever he was doing that caused "the Governor's

office [to] sen[d] them to make sure [he] stop[ped]." *Id.* at 66-67. The following week, OCSO deputies stopped Plaintiff for driving 50 miles per hour and subjected Plaintiff to a sobriety test. DE 1 at 39-44.   Plaintiff believes, but alleges no facts to show, these stops occurred in retaliation for his exercise of free speech in his emails, on various websites, and on social media platforms.

The Complaint seeks $2 million in damages for the deprivation of Plaintiff's right "to have unabridged speech and publish and address grievances" and for his loss of productivity and peace of mind. *Id.* at 47-49.   Plaintiff also seeks an emergency restraining order to stop law enforcement from monitoring him, detaining him, or taking his property with no legal basis. *Id.* at 46-49.

## **DISCUSSION**

Defendants move to dismiss on various grounds including but not limited to improper shotgun pleading, failure to state a claim on which relief can be granted, Eleventh Amendment immunity, and, in the case of PCSO and OCSO, failure to name a legal entity that can be sued. DE 9; DE 13; DE 20; DE 26; DE 40.   I agree with Defendants that dismissal is warranted on these bases.[4]

---

[4]   Although these arguments were advanced by some Defendants, I do not find dismissal warranted based on the *Younger* abstention doctrine or prosecutorial immunity.  Under the *Younger* abstention doctrine, "federal courts should not stay or enjoin pending state court proceedings except under special circumstances." *See, e.g.*, *Turner v. Broward Sheriff's Office*, 542 F. App'x 764, 766 (11th Cir. 2013) (citing *Younger v. Harris*, 401 U.S. 37, 41 (1971)). *Younger* abstention applies when (1) the challenged proceedings are ongoing state judicial proceedings; (2) the proceedings implicate important state interests; and (3) there is an adequate opportunity in the state proceeding to raise those constitutional concerns. *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003).  Here I do not find *Younger* applicable because Defendants have offered no evidence that state judicial proceedings relating to this case were pending when Plaintiff filed his complaint and or that Plaintiff could effectively raise his constitutional concerns in that process.  I also do not find State Attorney Archer's argument of absolute prosecutorial immunity to be persuasive. The United States Supreme Court has held that public prosecutors are entitled to absolute immunity for their activities associated with prosecuting cases, including initiating a prosecution and presenting the state's case, and are therefore not subject to suit under 42 U.S.C. § 1983. *Imbler v. Pachtman*, 424 U.S. 409, 410, 430 (1976); *Rowe v. Fort Lauderdale*, 279 F.3d 1271, 1279-80 (11th Cir. 2002).  Here, however, the Complaint contains no allegations that State Attorney Archer, who is the State Attorney for the 18th Judicial Circuit of Florida, ever prosecuted Plaintiff or initiated a prosecution against Plaintiff.  The 18th Judicial Circuit encompasses Brevard and Seminole Counties.  DE 20 at 1 n. 1.  The Complaint alleges that a warrant was obtained for Plaintiff's arrest and Plaintiff was arrested in Pinellas County, Florida, where Mr. Archer is not the State Attorney.  Since the Complaint does not allege facts showing Mr. Archer took prosecutorial action against Plaintiff, prosecutorial immunity does not apply.

**A.      Plaintiff's Complaint Should be Dismissed because it is a Shot Gun Pleading**

The Complaint violates Rule 8's requirement for "a short and plain statement of the claim." Fed. R. Civ. P. 8.  The purpose of the federal pleading rules is to ensure a plaintiff presents his claims "discretely and succinctly" so that his adversary can discern what he is claiming and frame a responsive pleading.  *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (quoting *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015)).  And while pleadings from *pro se* litigants are held to a less stringent standard than pleadings drafted by attorneys, they still must meet minimal pleading standards.  *Tannenbaum v. U.S.*148 F.3d 1262, 1263 (11th Cir. 1998); *Nassar v. Nassar*, 2020 WL 9460330, at *2 (S.D. Fla. July 16, 2020).

In his sprawling, 70+ page Complaint (inclusive of 172 paragraphs and eleven exhibits), Plaintiff makes various accusations against the named Defendants for purportedly violating Plaintiff's civil rights.  The Complaint is anything but a "short and plain statement" showing Plaintiff is entitled to relief.  Fed. R. Civ. P. 8(a)(2).   Far from a "short and plain statement," Plaintiff's Complaint is a lengthy narrative that includes Plaintiff's opinions, speculations, and varied allegations about a wide variety of topics, intermittently labeled with headings such as "Pimping in Florida," and "Grievances on Checks and Balances, Compound Jurisdiction, Anarchy, and The Bill of Rights."  *Id*. at 5, 11.  The allegations are sometimes connected to a particular Defendant or set of Defendants but sometimes not, making it virtually impossible to understand who did what and when.  *See*, *e.g., id.* at ¶¶120-21, 132, 134-35, 165-66.  Adding to the confusion, Plaintiff includes exhibits that are often undecipherable, with descriptions that often do not match what the exhibits themselves depict.  DE 1 at 50-74.[5]  Some of the exhibits are simply further

---

[5] For example, Exhibit A is described as "YouTube show[ing] marked deputy using Plaintiff's video to find Plaintiff's property."  *Id.* at 50.  The attachment merely depicts two graphs with labels that state: "Views last 48 hours" and "Views last 60 minutes."  *Id.* at 51.  Also, Exhibit K purports to depict "Deputies obtaining seized items off the ground

written statements from Plaintiff about the events discussed in his complaint.  *See, e.g.,* DE 1 at 39, ¶138 (stating that Exhibit G is a "full account" provided by Plaintiff about what happened when officers spoke to him about emailing politicians).  Other exhibits are plainly incomplete.  *See* DE 1, Exhibits E and F.

"A complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'"  *Lampkin-Asam v. Volusia Cty. Sch. Bd.,* 261 F. App'x 274, 277 (11th Cir. 2008).  The Eleventh Circuit has repeatedly condemned the use of shotgun pleadings for "imped[ing] the administration of the district courts' civil docket."  *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 806 n. 4 (11th Cir. 2010).  Shotgun pleadings require the court to sift through rambling and often incomprehensible allegations in an attempt to separate the meritorious claims from the unmeritorious, resulting in a "massive waste of judicial and private resources."  *Id.*  The Eleventh Circuit issued an opinion recently reminding district courts that shotgun pleadings are an unacceptable form of establishing a claim for relief.  *Barmapov*, 986 F.3d at 1324-1326.  As the majority explained, shotgun pleadings "are flatly forbidden by the spirit, if not the letter, of these rules" because they are "calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked."  *Id.* at 1324.  "Besides violating the rules, shotgun pleadings also 'waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts'" such that the Eleventh Circuit has "little tolerance for them."  *Id.* (citations omitted).

There are four general types of shotgun pleadings:

---

on Plaintiff's property."  *Id.* at 50.  The attachments, however, are three photographs of an unidentified man, who appears to be in handcuffs in one of the photographs.  *Id.* at 72-74.

> The first [category] is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." The second is a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." The third is a complaint that does not separate "each cause of action or claim for relief" into a different count. And the final type of shotgun pleading is a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."

*Barmapov*, 986 F.3d at 1324–25 (quoting *Weiland*, 792 F.3d at 1321–23).

Plaintiff's Complaint is a shotgun pleading in every respect.  It alleges multiple violations in a single paragraph that adopts all the allegations in the 172 paragraphs that follow.  DE 1 at ¶8. It fails to "separate 'each cause of action or claim for relief'" into different counts or "specify which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."  *Barmapov*, 986 F.3d at 1324–25.  It is disjointed, repetitive, and replete with longwinded recitations of immaterial statements, suppositions, and speculations about a murder in Seminole County, Florida, policing practices, political figures, and parties, the 2020 presidential election, and Plaintiff's activities and political beliefs, among other matters.   A court is under no obligation to parse all of this out to identify what specifically Plaintiff is claiming as to each Defendant.   Because it is a shotgun pleading in every sense of the term, the Complaint fails to state a claim and should be dismissed.

**B.     Plaintiff's Complaint Should be Dismissed because it Fails to State a Claim for which Relief Can be Granted Against Any of the Individual Defendants**

In addition to being a shotgun pleading, the complaint fails to plead facts plausibly showing any of the Defendants committed acts that deprived Plaintiff of his civil rights.  It sets forth no facts demonstrating that State Attorney Archer or Speaker Sprowls took any actions against Plaintiff, much less actions that deprived him of his rights.  There are no factual allegations in the

complaint about any actions taken by State Attorney Archer in relation to Plaintiff. Instead, Plaintiff speculates – without factual support -- that Phil Archer "has spent untold amounts of the time of public employees and taxpayer funds to abuse Plaintiff," was "sending cops to stalk Plaintiff because of Plaintiff's grievances," "do[es] not like Plaintiff," and has "used Shannon Sprowls and scared her … to arrest Plaintiff for political grievances and posting fliers in their fief[dom]." DE 1 at ¶¶77, 92 and 94. Similarly, there are no factual allegations about actions taken by Speaker Sprowls regarding Plaintiff. Plaintiff complains that State Attorney Phil Archer and Speaker Sprowls sent "armed sheriffs to harass Plaintiff, without having probable cause[,]" and "got a corrupt judge to sign an affidavit full of lies," *id.* at ¶¶131-33, but provides no factual support for these allegations, only assumptions, speculation, and conjecture. Thus, claims against State Attorney Archer and Speaker Sprowls are due to be dismissed.

Plaintiff also does not articulate any facts plausibly showing that Governor DeSantis violated his civil rights. Regarding Governor DeSantis, Plaintiff alleges only that OCSO deputies said they were conducting a welfare check on behalf of the Governor, DE 1 at ¶¶131-134. Even if true, conducting a welfare check is not a violation of civil rights. In addition, the complaint alleges no facts plausibly showing any personal awareness by Governor DeSantis of Plaintiff or his emails. Plaintiff's allegations indicate as much by stating that the deputies stated: "we have a message from the Governor's *office*" and Plaintiff himself says that he "cannot recall ever sending any emails to the Governor." *Id.* at ¶¶135-136 (emphasis added). The Complaint alleges no other facts involving Governor DeSantis. As such, claims against Governor DeSantis must also be dismissed.

**C.      Claims Against Governor DeSantis, Speaker Sprowls, and State Attorney Archer in their Official Capacities are Barred by Sovereign Immunity**

To the extent that Plaintiff sues the individual Defendants in their official capacities for monetary damages, the suit is barred by Eleventh Amendment immunity.  Although the text of the Eleventh Amendment bars citizens of another State from bringing suit in federal court against a State, "[t]he Supreme Court has extended this protection to also bar suits against a state in federal court brought by the state's own citizens."  *Stanley v. Israel*, 843 F.3d 920, 924 (11th Cir. 2016). Courts consider suits against state officials, in their official capacity, as suits against the State.  *See Hafer v. Melo*, 502 U.S. 21, 21 (1991) ("[O]fficial-capacity defendants [   ] are not 'persons' because they assume the identity of the government that employs them.").  This includes claims against a state for alleged deprivation of civil liberties under 42 U.S.C. § 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989).  "There are established exceptions to Eleventh Amendment immunity: a state may waive its immunity, or congress may abrogate it."  *Jones v. Rothenberg*, No. 10-CV-20745-COOKE, 2010 WL 2650899, at *1 (S.D. Fla. June 30, 2010) (citing *In re Burke*, 146 F.3d 1313, 1317 (11th Cir.1998)).  Neither has happened here.  Thus, Governor DeSantis, Speaker Sprowls, and State Attorney Archer[6] have Eleventh Amendment immunity from claims against them in their official capacities for monetary damages.

I do not, however, agree that sovereign immunity bars suit against the individual Defendants in their official capacities for injunctive relief.  The *Ex parte Young* doctrine permits 'suits against state officers [in their official capacity] seeking prospective equitable relief to end continuing violations of federal law.'"  *Nicholl v. Att'y Gen. Georgia*, 769 F. App'x 813, 815 (11th Cir. 2019) (quoting *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs.*,

---

[6] The State Attorney is an "arm of the state" and falls within the ambit of the State's Eleventh Amendment immunity. *See Cyber Zone E-Café, Inc. v. King*, 782 F. Supp.2d 1331, 1337 (M.D. Fla. 2011) (*citing Perez v. State Attorney's Office*, 2008 WL 4539430, at *2 (M.D. Fla. Oct. 8, 2008)).

225 F.3d 1208, 1219 (11th Cir. 2000) and citing *Ex parte Young*, 209 U.S. 123, (1908)).  "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (internal quotation marks and citation omitted).  Here, the Complaint seeks a restraining order against Defendants for perceived harassment that Plaintiff alleges was ongoing throughout 2021 at least until August 16, 2021, DE 1 at ¶133.  Plaintiff filed the Complaint on August 27, 2021.   Thus, the Complaint's request for injunctive relief may fall within *Ex parte Young's* narrow exception to sovereign immunity, but as previously discussed the Complaint currently is a shotgun pleading that fails to state claims against any Defendant.

**D.    Claims against the Sheriff's Offices Should be Dismissed because Sheriff's Offices are not Legal Entities Under Florida Law**

As to the two sheriff's offices, Plaintiff's lawsuit must be dismissed because Florida law is clear that "[s]heriff's departments ... are not usually considered legal entities subject to suit." *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992).   Rather, "[f]or claims against a sheriff's department ..., the appropriate defendant is the Sheriff in his official capacity." *Heckman v. Hall*, No. 3:07CV268MCRMD, 2007 WL 2175919, at *3 (N.D. Fla. July 25, 2007), *report and recommendation adopted*, No. 3:07CV268/MCR/MD, 2007 WL 2428487 (N.D. Fla. Aug. 27, 2007).  Because the Complaint names sheriff's departments rather than the sheriffs themselves, Pinellas County Sheriff's Office and Okeechobee County Sheriff's Office should be dismissed.

E.     **Claims that Plaintiff's Arrest, Detention, Search, or Seizure in January 2021 violated Plaintiff's First or Fourth Amendment Rights Should Be Dismissed with Prejudice Since Facts Alleged in the Complaint Show Law Enforcement's Actions were Supported by Probable Cause and Authorized by a Warrant**

Normally one who fails to allege facts stating a claim or who files a shotgun pleading is given an opportunity to amend his complaint to address its deficiencies. *Sarhan v. Miami Dade Coll.*, 800 F. App'x 769, 772 (11th Cir. 2020) (affirming district court's dismissal of *pro se* plaintiff's *fourth* amended complaint as a shotgun pleading). Here, however, insofar as Plaintiff claims constitutional violations based upon his arrest, detention, search or seizure in January 2021, such claims should be dismissed with prejudice because amendment would be futile. *Christman v. Walsh*, 416 F. App'x 841, 844 (11th Cir. 2011) ("A district court may deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning that the amended complaint would not survive a motion to dismiss.").

According to the Complaint's introductory paragraph, Defendants have caused Plaintiff to be unlawfully "tracked, searched, detained, or arrested, … all without probable cause that a crime has been committed," and all with the purpose of depriving Plaintiff of his First Amendment rights. DE 1 at 1 and ¶¶9-10. The First Amendment protects the rights guaranteed by it by prohibiting the government from taking retaliatory actions based on an individual's constitutionally protected speech or conduct. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006). "The elements of a First Amendment retaliation claim are (1) the plaintiff engaged in speech or an act that was constitutionally protected, (2) the defendant's retaliatory conduct adversely affected the protected speech or act, and (3) there is a causal connection between the retaliatory actions and the adverse effect on the constitutionally-protected speech or act." *O'Boyle v. Sweetapple*, 187 F. Supp. 3d 1365, 1370 (S.D. Fla. 2016) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)). As to the third element, "it must be a 'but-for' cause, meaning that the adverse action against the

plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).

When a plaintiff claims that he was arrested or prosecuted in retaliation for exercising his First Amendment rights, the plaintiff must "plead and prove the absence of probable cause for the underlying criminal charge." *Nieves*, 139 S. Ct. at 1724.[7] Here, Plaintiff alleges in a conclusory fashion that his January 2021 arrest and investigation occurred without probable cause; however, the averments of his Complaint and the attachments thereto establish that probable cause existed. DE 1 at ¶¶ 132; DE 1 at 58; DE 20-1. In addition, under the Fourth Amendment, "[p]robable cause constitutes an absolute bar to both state and § 1983 claims alleging false arrest [and detention]." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998); *see also Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009) (disagreeing that seizure of property violated plaintiff's fourth amendment rights because law enforcement had probable cause to seize the plaintiff's property); *Bloom v. Alverez*, 498 F. App'x 867, 879-80 (11th Cir. 2012) (affirming the granting of a motion to dismiss plaintiff's alleged constitutional violations relating to "arrest, seizure and prosecution" on grounds that the complaint "establishe[d] at least arguable probable cause for the issuing of [a] search warrant"). Indeed, Plaintiff acknowledges the importance of probable cause to any constitutional analysis by repeatedly insisting that the actions he complains of were taken without probable cause. DE 1 at ¶¶9, 10, 117, 170. However, I am not required to accept Plaintiff's legal conclusions on a motion to dismiss. *Iqbal*, 556 U.S. at 662 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

---

[7] The Supreme Court found a narrow exception, not applicable here, exists where officers would not typically arrest for the charges at issue. *Nieves*, 139 S. Ct. at 1727.

The Complaint's factual allegations, taken as true, plainly demonstrate probable cause to believe Plaintiff committed the crime for which he was investigated and arrested.  Plaintiff acknowledges sending State Attorney Archer an electronic communication about Speaker Sprowls' wife. DE 1 at ¶¶58-59; DE 1 at 58; DE 20-1 at 4-8.  He acknowledges the content of that communication.  *Id*.  He further acknowledges that after sending the communication he traveled to Pinellas County, Florida, DE 1 at ¶¶86-87, where, according to the criminal complaint, Speaker Sprowls resides and Plaintiff does not, DE 13-1 at 6, 10.  A criminal complaint was filed against Plaintiff swearing to these and other pertinent facts and a Florida judge issued a warrant authorizing Plaintiff's arrest.  DE 13-1.  This information—much of which Plaintiff admits in his complaint—provides probable cause to believe Plaintiff sent threatening communications about the Speaker's wife thereby committing a crime, namely "unlawfully engag[ing] in a course of conduct to communicate, or to cause to be communicated, words, images, or language by or through the use of electronic mail or electronic communication, directed at a specific person, causing substantial emotional distress to that person and serving no legitimate purpose," in violation of Fla. Stat. § 784.048(1)(d). DE 13-1 at 2.  Because Plaintiff's investigation and arrest in January 2021 was supported by probable cause and authorized by a warrant, any claims relating to that arrest and investigation should be dismissed with prejudice as an effort to amend would be futile.

## CONCLUSION

In sum, the Complaint should be dismissed because it is a shotgun pleading and fails to state a claim for which relief can be granted.  District courts are required to provide plaintiffs an opportunity to replead before dismissing a case with prejudice on the basis of shotgun pleading or failure to state a claim.  *See Grappell v. Carvalho*, 847 F. App'x 698, 701, n. 2 (11th Cir. 2021)

(citing *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018)).  However, here, claims against the individual Defendants for monetary damages should be dismissed with prejudice because these Defendants are immune from suit in their official capacities.  Moreover, claims against any of the Defendants for constitutional violations based on Plaintiff's arrest, detention, search, or seizure in January 2021 should be dismissed with prejudice since Plaintiff admits facts in the complaint that establish probable cause to believe he committed an offense.

It is difficult to discern from Plaintiff's pleading whether any potential claims remain; I therefore recommend out of an abundance of caution that Plaintiff be given one opportunity to replead claims, if any, not dismissed with prejudice. If allowed to replead, Plaintiff is cautioned that any amendment must comply with the Federal Rules of Civil Procedure.  Specifically, an amended complaint must provide a *short and plain* statement of Plaintiff's claims; must state claims in numbered paragraphs limited to a single set of *relevant* circumstances; must state each cause of action founded on a separate occurrence in a separate count; must specify who Plaintiff is suing in each cause of action; and must set forth facts – not speculations, opinions, or legal conclusions – plausibly demonstrating a basis for the claims.  Failure to comply will result in dismissal with prejudice.

Accordingly, I **RECOMMEND** as follows:

1.  that Governor DeSantis' Motion to Dismiss (DE 13) be **GRANTED** and that any claims against Governor DeSantis in his official capacity for monetary damages be **DISMISSED WITH PREJUDICE**;

2.  that Speaker Sprowls' Motion to Dismiss (DE 40) be **GRANTED** and that any claims against Speaker Sprowls in his official capacity for monetary damages be **DISMISSED WITH PREJUDICE**;

3. that State Attorney Archer's Motion to Dismiss (DE 20) be **GRANTED**, that any claims against State Attorney Archer in his official capacity for monetary damages be **DISMISSED WITH PREJUDICE;**

4. that Pinellas County Sheriff's Office's Motion to Dismiss (DE 9) and Okeechobee County Sheriff's Office's Motion to Dismiss (DE 26) be **GRANTED** and that these Defendants be **DISMISSED WITHOUT PREJUDICE** to Plaintiff naming the appropriate party;

5. that any claims in the Complaint alleging First or Fourth Amendment violations by the Defendants based upon the arrest, detention, search, or seizure of Plaintiff or his electronic devices in January 2021 be **DISMISSED WITH PREJUDICE**;

6. that Plaintiff be cautioned that failure to file an amended complaint within 20 days of the Court's order on this report may result in dismissal of Plaintiff's case with prejudice without further notice; and

7. that all pending Motions be **DENIED AS MOOT**.[8]

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge Jose E. Martinez.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140,

---

[8] Among other filings, Plaintiff filed four emergency motions for temporary restraining order.  DE 8; DE 16; DE 45; DE 57.  Plaintiff also recently filed a motion titled: Motion to Put on the Armor of God and Come Forward with the Truth Buckled Around Your Waist.  DE 65.  Because I find that Plaintiff fails to state a viable claim, I do not reach any other requests for relief and recommend that all pending motions be denied as moot.

149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

Conversely, if a party does not intend to object to this Report and Recommendation, then that party

shall file a Notice of such within five (5) days of the date of this Report and Recommendation.

     **DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 19th day of

August, 2022.

SHANIEK MILLS. MAYNARD
U.S. MAGISTRATE JUDGE